**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE Mortgage Electronic Registration Systems (MERS) Litigation | MDL DOCKET NO. 09-2119-JAT |
| _____ | **ORDER** |
| This Order Applies to: | |
| CV 10-215-PHX-JAT | |
| CV 10-216-PHX-JAT | |
| CV 10-220-PHX-JAT | |
| CV 10-221-PHX-JAT | |
| CV 10-457-PHX-JAT | |
| CV 10-460-PHX-JAT | |
| CV 10-471-PHX-JAT | |
| CV 10-485-PHX-JAT | |
| CV 10-487-PHX-JAT | |
| CV 10-488-PHX-JAT | |
| CV 10-489-PHX-JAT | |
| CV 10-492-PHX-JAT | |
| CV 10-493-PHX-JAT | |
| CV 10-494-PHX-JAT | |
| _____ | |

Before the Court are forty motions to dismiss for failure to state a claim under Rule 12(b)(6) brought by various defendants in the above-captioned fourteen member cases of this multi-district litigation. The Court heard oral argument on January 18, 2010.[1]  As thirteen of the fourteen cases share nearly identical causes of action, the Court will group similar

---

[1] At oral argument, counsel for various plaintiffs attempted to read portions of a deposition into the record. The deposition was taken in an unrelated action, was clearly beyond the scope of a hearing on a motion to dismiss, and was submitted to the Court in a last-minute filing. For all these reasons, the Court has not considered the contents of the deposition before issuing this Order.

claims together and address the 12(b)(6) motions pertaining to each set of claims. For the reasons that follow, the Court grants all forty motions to dismiss.[2]

## I. BACKGROUND

In all of the above-captioned member cases, Plaintiffs initially filed their complaints in the District of Nevada. The cases were then transferred to this Court by the MDL Panel.

In *Stoffels, et al. v. GRP Financial Services, et al.*, CV 10-215-PHX-JAT, after Plaintiffs' case was transferred to this Court, Plaintiffs filed a Second Amended Complaint in the District of Nevada. *See* Doc. 139, *Stoffels*, 3:08-cv-00468-ECR-GWF (D. Nev. filed Feb. 16, 2010). Although Plaintiffs have yet to file a copy of the Second Amended Complaint in this Court, the Court considered it when determining which claims were transferred to the MDL and which were remanded to the transferor court. The claims which were held to have been transferred, at least in part, include wrongful foreclosure, intentional/negligent misrepresentation, slander of title, unjust enrichment, conspiracy to commit fraud related to MERS system, injunctive relief, and declaratory relief. Defendants filed two motions to dismiss (Doc. 707, 1168) and Plaintiffs responded (Doc. 890, 1177).

In *Hearne v. Countrywide Home Loans, Inc., et al.*, CV 10-216-PHX-JAT, Plaintiff Treva Hearne alleges seven causes of action, all of which were transferred at least in part: wrongful foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; unjust enrichment; and injunctive relief; and declaratory relief. Defendants filed two motions to dismiss (Doc. 471, 700) and Plaintiffs responded (Doc. 614, 855).

In *Burke, et al. v. First Centennial Title, et al.*, CV 10-220-PHX-JAT, Plaintiffs Timothy Burke, Dawn Burke, Russell L. Smith, and Shirley Hope Smith allege six causes of action, all of which were transferred at least in part: wrongful foreclosure; fraud in the

---

[2] Several Defendants have joined in various motions to dismiss and/or replies in support of motions to dismiss. To the extent the Court need address these joinders, they are granted.

- 2 -

inducement; conspiracy to commit fraud by creation, operation and use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; unjust enrichment; and injunctive relief, declaratory relief, reformation and quiet title. Defendants filed seven motions to dismiss (Doc. 442, 455, 456, 459, 467, 472, 694) and Plaintiffs responded (Doc. 603, 855).

In *Dalby, et al. v. Citimortgage, Inc., et al.*, CV 10-221-PHX-JAT, Plaintiffs Randall Dalby and Kandi Deconti-Dalby, Molly England, Walt Swickla and Sharon Swickla, Shane Synder, Jennifer R. Quilici, Rick Bell, Jewel Shepard; and Jean Merkelbach allege six causes of action, all of which were transferred at least in part: wrongful foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; unjust enrichment; and injunctive relief, declaratory relief, reformation and quiet title. Defendants filed five motions to dismiss (Doc. 444, 460, 463, 469, 698) and Plaintiffs responded (Doc. 619, 855).

In *Mason, et al. v. Countrywide Home Loans, Inc., et al.*, CV 10-457-PHX-JAT, Plaintiffs allege six causes of action, five of which were transferred at least in part: wrongful foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; and injunctive relief, declaratory relief, reformation and quiet title. Defendants filed four motions to dismiss (Doc. 737, 755, 758, 794) and Plaintiffs responded (Doc. 922).

In *Fitzgerald v. Quality Loan Service Corporation, et al.*, CV 10-460-PHX-JAT, Plaintiff alleges six causes of action, five of which were transferred at least in part: wrongful foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; and injunctive relief, declaratory relief, reformation and quiet title. Defendants filed four motions to dismiss (Doc. 729, 738, 759, 1085) and Plaintiff responded (Doc. 879, 947).

1    In *Whalen v. Mortgage Electronic Registration Systems, Inc., et al.*, CV 10-471-PHX-
2  JAT, Plaintiff's Complaint contains only two causes of action, both of which were transferred
3  to this Court: injunctive relief and declaratory relief. Defendants filed two motions to
4  dismiss (Doc. 583, 703) and Plaintiff responded (Doc. 829, 842, 858).

5    In *Berilo v. HSBC Mortgage Corporation, USA, et al.*, CV 10-485-PHX-JAT, Plaintiff
6  alleges thirteen causes of action, nine of which were transferred at least in part: wrongful
7  foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and
8  use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation
9  and use of the MERS system; unjust enrichment; injunctive relief; declaratory relief; quiet
10 title; and rescission. Defendants filed two motions to dismiss (Doc. 689, 739) and Plaintiff
11 responded (Doc. 828, 866).

12   In *Fitzwater, et al. v. BAC Home Loans Servicing, LP, et al.*, CV 10-487-PHX-JAT,
13 Plaintiffs allege thirteen causes of action, seven of which were transferred at least in part:
14 wrongful foreclosure; fraud in the inducement; conspiracy to commit fraud by creation,
15 operation and use of the MERS system; conspiracy to commit wrongful foreclosure by
16 creation, operation and use of the MERS system; unjust enrichment; injunctive relief; and
17 declaratory relief. Defendants filed a motion to dismiss (Doc. 745) and Plaintiffs responded
18 (Doc. 863).

19   In *Evans v. Aurora Loan Services, LLC, et al.*, CV 10-488-PHX-JAT, Plaintiff alleges
20 fourteen causes of action, eight of which were transferred at least in part: wrongful
21 foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and
22 use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation
23 and use of the MERS system; unjust enrichment; injunctive relief; declaratory relief; and
24 quiet title. Defendants filed two motions to dismiss (Doc. 765, 798) and Plaintiff responded
25 (Doc. 880).

26   In *Kartman v. Ocwen Loan Servicing, LLC, et al.*, CV 10-489-PHX-JAT, Plaintiff
27 alleges eleven causes of action, nine of which were transferred at least in part: wrongful
28 foreclosure; fraud in the inducement; conspiracy to commit fraud by creation, operation and

1 use of the MERS system; conspiracy to commit wrongful foreclosure by creation, operation
2 and use of the MERS system; unjust enrichment; injunctive relief; declaratory relief; quiet
3 title; and rescission.  Defendants filed two motions to dismiss (Doc. 593, 740) and Plaintiff
4 responded (Doc. 725, 861).

5       In *Bricker v. Wells Fargo Bank, N.A., et al.*, CV 10-492-PHX-JAT, Plaintiff alleges
6 seven causes of action, all of which were transferred at least in part: wrongful foreclosure;
7 fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the
8 MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of
9 the MERS system; unjust enrichment; declaratory relief; and quiet title.  Defendants filed
10 three motions to dismiss (Doc. 575, 691, 747) and Plaintiff responded (Doc. 827, 862, 1039).

11       In *Boyd v. Wells Fargo Bank, N.A., et al.*, CV 10-493-PHX-JAT, Plaintiff alleges
12 fifteen causes of action, nine of which were transferred at least in part: wrongful foreclosure;
13 fraud in the inducement; conspiracy to commit fraud by creation, operation and use of the
14 MERS system; conspiracy to commit wrongful foreclosure by creation, operation and use of
15 the MERS system; unjust enrichment; injunctive relief; declaratory relief; quiet title; and
16 rescission.  Defendants filed two motions to dismiss (Doc. 697, 744) and Plaintiff responded
17 (Doc. 826, 864).

18       In *Golding v. Amtrust Bank, et al.*, CV 10-494-PHX-JAT, Plaintiff alleges eight
19 causes of action, seven of which were transferred at least in part: wrongful foreclosure; fraud
20 in the inducement; conspiracy to commit fraud by creation, operation and use of the MERS
21 system; conspiracy to commit wrongful foreclosure by creation, operation and use of the
22 MERS system; unjust enrichment; declaratory relief; and quiet title.  Defendants filed two
23 motions to dismiss (Doc. 746, 1011) and Plaintiff responded (Doc. 865).

## II. LEGAL STANDARD

25       "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Navarro*
26 *v. Block,* 250 F.3d 7129, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint
27 must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
28 plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

- 5 -

1 *Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly,* 550 U.S. at 545 (internal quotations, citations and alterations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. Rule. Civ. P. 8(a)(2)) (citation omitted).

Under Rule 9(b), plaintiffs have an even higher pleading standard in all allegations of fraud, especially in multi-defendant cases such as these. The Ninth Circuit has repeatedly emphasized that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (internal citation omitted); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("membership in an association does not render an association's members automatically liable" for a conspiracy); *N. Cal. Pharm. Ass'n v. United States*, 306 F.2d 379, 388-89 (9th Cir. 1962) (trade association membership "does not mean, however, that every member of the Association, by reason of his membership alone, becomes a coconspirator"). This heightened pleading standard also applies to claims for misrepresentation under Nevada law. *See Larson v. HomeComings Fin.*, 680 F. Supp. 2d 1230, 12343 (D. Nev. 2009).

- 6 -

### III. WRONGFUL FORECLOSURE

In thirteen of these fourteen member cases, Plaintiffs assert claims for wrongful foreclosure. Each claim fails to state a claim as a matter of law for at least two reasons.

*A. Failure to Allege Lack of Default*

First, Nevada law is clear that "[a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Ernestburg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *6 (D. Nev. Jan. 22, 2009) (internal citations and quotations omitted). The plaintiff must establish that they were not "in default when the power of sale was exercised." *Id.* (citing *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983)). Furthermore, a claim for wrongful foreclosure does not arise until the power of sale is exercised. *Collins*, 662 P.2d at 623.

By failing to plead that their loans are not in default, all of Plaintiffs' claims for wrongful foreclosure are barred as a matter of law and will be dismissed for failure to state a claim. Further, for many of the claims in these actions, Plaintiffs do not allege that the power of sale has been exercised. For these plaintiffs, these claims for wrongful foreclosure are premature and not actionable.

*B. MERS and MERS-appointed trustees have power to foreclose*

Even if Plaintiffs' claims for wrongful foreclosure were not barred by their failure to plead absence of default, Plaintiffs' claims suffer other deficiencies. Plaintiffs have failed to allege facts upon which the Court could draw the reasonable inference that the foreclosure trustees were not properly appointed and thus lacked the power to exercise the power of sale. Plaintiffs' "split the note" theory has been recognized by several courts in a particular context and to a limited extent. MERS has been found to be less than a traditional beneficiary in that it holds the deed of trust, but not the accompanying mortgage note and the payments made on account of such loans. *See In re Hawkins*, No. BK-S-07-13593-LBR, 2009 WL 901766

(Bankr. D. Nev. Mar. 31, 2009). This "splitting" of the note from the deed of trust does affect the parties' legal rights and thus, when MERS or a participant in the MERS system has needed a Court to grant affirmative relief—for example, when it needs relief from an automatic stay in a bankruptcy court—Courts have not granted that relief. *See In re Hawkins* (denying relief from automatic state in bankruptcy proceedings); *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008) (same); *Bellistri v. Ocwen Loan Servicing, L.L.C.*, 284 S.W.3d 619 (Mo. Ct. App. 2009) (denying relief to a foreclosure trustee appointed by MERS for lack of "interest" in the property).

However, the situation in the cases before the Court differ in one important respect: they concern non-judicial foreclosures under Nevada law. "Defendants do not need to produce the note to the property in order to proceed with a non-judicial foreclosure." *Urbina v. Homeview Lending Inc.*, 681 F. Supp. 2d 1254 (D. Nev. 2009) (dismissing Plaintiffs' allegations that Defendants did not possess the original note); *see also Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (rejecting similar "show me the note" argument under Arizona's similar non-judicial foreclosure law and collecting cases with similar holdings).

Some Plaintiffs further argue that because "the note and deed of trust were no longer together" the holders of the notes "are no longer allowed to enforce the note through non-judicial foreclosure." *See*, *e.g.*, Doc. 828 at 10. Yet Plaintiffs have failed to allege any facts suggesting that MERS is not the nominee of the current owner of the promissory note; nor do Plaintiffs allege any facts supporting their assertion that the promissory note and the deed of trust have been truly bifurcated. Plaintiffs have not cited any legal authority where the naming of MERS—and the consequent "splitting of the note"—was cause to enjoin a non-judicial foreclosure as wrongful. Indeed Nevada case law universally[3] holds that these

---

[3] On the eve of oral argument, Plaintiffs submitted–as supplemental authority–two orders from two Nevada State Court cases: *Logan v. World Savings Bank, et al.*, Case No. CV-10-02354 (Nev. 2d J. Dist. Jan. 12, 2011) (order denying Motion to Dismiss) and *Spinnato v. Regional Trustee Services Corp., et al.*, Case No. CV-09-02927 (Nev. 2d J. Dist.

deeds are enforceable. *See Orzoff v. MERS*, No. 2:08-cv-01512, 2009 WL 4643229, at *6 (D. Nev. Mar. 26, 2009) ("Plaintiff has cited no authority that is controlling upon this Court that holds MERS cannot have standing as a nominee beneficiary in connection with a nonjudicial foreclosure proceeding under Nevada law. This Court has previously determined that MERS does have such standing."); *Vazquez v. Aurora Loan Servs.*, No 2:08-cv-01800, slip op. at 2 (D. Nev. Mar. 30, 2009) (loan documents sufficiently demonstrated standing by Defendants, including MERS, "with respect to the loan and the foreclosure"); *Gonzalez v. Home American Mortgage Corp.*, Case No. 2:09-cv-00244, slip op. at 7-9 (D. Nev. Mar. 12, 2009) (MERS and successor trustee have the power to initiate non-judicial foreclosure without presenting the note); *Ramos v. MERS, Inc.*, Case No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *3 (D. Nev. Mar. 5, 2009) ("under the deed of trust, MERS was empowered to foreclose on the property and to appoint [a] substitute trustee for purpose of conducting the foreclosure"). Therefore, for this additional reason, Plaintiffs' claims for wrongful foreclosure fail to state a claim.

Several Plaintiffs argue that because "the investors that funded this loan were strangers to the purported loan transactions and which parties were and are unknown to Plaintiffs and, none of these servicers funded the Plaintiffs' loans with any of their own assets and are not owed any of the funds to be repaid by Plaintiffs, and do not stand to suffer any loss should they be enjoined from foreclosing." *See*, *e.g.*, *Mason* Complaint, CV 10-457-PHX-JAT, Doc. 1-1 at 10. No Plaintiff, however, alleges specific facts that would support such a theory or identifies any legal authority where this "holder in due course" argument is a bar to non-judicial foreclosure.

---

Jan. 12, 2011) (order denying Motion to Dismiss). *See* Doc. 1236. In both of these cases, Nevada District Judge Patrick Flanagan held that similar causes of action for wrongful foreclosure survived motions to dismiss, but neither interlocutory order endorses the proposition that Nevada law prohibits the authorization of a foreclosure sale due to the operation of MERS.

- 9 -

In sum, Plaintiffs' actions for wrongful foreclosure are all dismissed for failure to state a claim.

### III. CONSPIRACY TO COMMIT WRONGFUL FORECLOSURE

*A.  Lack of Underlying Claim*

In thirteen of these fourteen member cases, Plaintiffs also assert claims for conspiracy to commit wrongful foreclosure.  Since Plaintiffs fail to state a claim for wrongful foreclosure, their claims for conspiracy to commit wrongful foreclosure also must fail.  It is well settled that a plaintiff cannot prevail on a claim for conspiracy if the underlying claim is defective.  *Grisham v. Philip Morris USA*, 403 F.3d 631, 635 (9th Cir. 2000) (claim for civil conspiracy fails if underlying cause of action fails). "Civil conspiracy is not an independent cause of action—it must arise from some underlying wrong." *Paul Steelman Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610, at *3 (D. Nev. Jan. 26, 2007) ("having concluded that Plaintiffs' claim of tortious interference is not actionable as pleaded, Steelman's civil conspiracy claim must also fail") (citing *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 165 (Nev. 1999)).  Accordingly, because plaintiffs have not and cannot present a valid claim for wrongful foreclosure, these claims are dismissed as a matter of law.

*B.  Failure to Allege Specific Facts to Support Inference of a Conspiracy*

Regardless of the merits of Plaintiffs' underlying claims for fraud, Plaintiffs' claim that Defendants conspired to commit wrongful foreclosure is insufficient both for a failure to plead conspiracy with the requisite particularity and for a failure to plead an agreement to participate in the wrongful foreclosure.

For a conspiracy-to-defraud action to lie under Nevada law, a plaintiff must plead and prove that there is: "(1) a conspiracy agreement . . . ; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005).  "To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit." *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).  Thus, to maintain a

- 10 -

viable conspiracy claim a plaintiff must allege with sufficient factual particularity the "specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quotations and citation omitted). Put another way, plaintiffs must plead the "who, what, when, where and how of the misconduct charged" necessary to satisfy the requirements of Federal Rule of Civil Procedure 9(b). *See Gowen v. Tiltware LLC*, No. 2:08-CV-1581, 2009 WL 1441653, at *9 (D. Nev. May 19, 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Specifically, "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.*, 165 F.Supp.2d 1010, 1020-21 (D. Ariz. 2001) (quoting *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D. Cal. 1990)).

Plaintiffs allege that Defendants: (1) formed an association to conspire in order to deprive Plaintiffs of their property; (2) knew Plaintiffs would be unable to pay the loans and, thus, Defendants would be in a position to seize Plaintiffs' real property through foreclosure; and (3) targeted Plaintiffs for the purpose of misrepresenting the terms of the loans in order to seize Plaintiffs' properties. However, Plaintiffs do not plead any of these allegations with sufficient factual allegations. Plaintiffs have failed to plead how or even when Defendants formed this purported association to conspire. Neither have Plaintiffs included any factual allegations pertaining to how Defendants targeted Plaintiffs. Plaintiffs' allegations amount to a claim that Defendants *somehow* formed a conspiracy with the intent to provide Plaintiffs with a loan, the terms of which they could not afford, thus permitting Defendants to gain control of the properties through foreclosure. "But terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation–for example, identifying a written agreement or even a basis for inferring a tacit agreement–but a court is not required to accept such terms as a sufficient basis for a

- 11 -

1  complaint. The case law on this point is ample." *DM Research, Inc. v. Coll. of Am.*
2  *Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (cited with approval in *Twombly*, 550 U.S. at
3  557). Plaintiffs have failed to provide any specific, factual allegations inferring even a tacit
4  agreement. As such, Plaintiffs' claims for conspiracy fall short of the requirements of Rule
5  9(b), *Twombly*, and *Iqbal*.

6  Plaintiffs' claim for conspiracy to commit wrongful foreclosure fails both because
7  Plaintiffs have not stated a claim for the underlying tort–wrongful foreclosure–and because
8  Plaintiffs fail to state the basic elements of conspiracy. Thus, the Court will grant the
9  motions to dismiss these claims.

## IV. FRAUD IN THE INDUCEMENT

11  In twelve of these fourteen member cases, this Court has retained at least part of
12  Plaintiffs' claims for Fraud in the Inducement. In Nevada, to state a claim for fraud in the
13  inducement, a plaintiff must allege (1) a false representation of material fact made by the
14  defendant; (2) defendant's knowledge or belief that the representation is false; (3)
15  defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon
16  the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5)
17  damage to the plaintiff resulting from such reliance. *Albert H. Wohlers & Co. v. Bartgis*, 114
18  Nev. 1249, 1260-61 (1998).

19  Plaintiffs do not state a claim for fraud. As a representative example, Plaintiff Hearne
20  alleges that Defendants "failed to advise the Plaintiff that the obligations on their notes had
21  been discharged" and "concealed the true terms of the loans." Such lack of disclosure can
22  only support a claim for fraudulent inducement if the defendant is under a fiduciary duty to
23  disclose the fact in question. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1154 (9th Cir.
24  2005). Lenders have no such duty under Nevada law. *See Gamboa v. World Sav. Bank,*
25  *FSB*, No. 3:10-CV-454-ECR-VPC, 2010 WL 5071166 (D. Nev. Dec. 6, 2010); *Yerrington*
26  *Ford, Inc. v. GMAC*, 359 F. Supp. 2d 1075 (D. Nev. 2004), *overruled on other grounds sub.*
27  *nom. Giles v. GMAC*, 494 F.3d 865 (9th Cir. 2007).

28

Additionally, none of Plaintiffs' allegations with respect to fraud are not made with particularity. Rather, Plaintiffs' allegations amount to mere conclusory statements and general averments of fraud. As such, Plaintiffs' complaints fall short of the requirements of Rule 9(b), *Twombly*, and *Iqbal*.

Thus, due both a lack of duty to disclose and insufficient factual allegations under the Rule 9(b) standard, the Court will dismiss these claims for failure to state a claim.

**V. CONSPIRACY TO COMMIT FRAUD RELATED TO THE MERS SYSTEM**

In thirteen of these fourteen member cases, Plaintiffs assert that various named Defendants conspired to commit fraud through the MERS system. From the complaints, Plaintiffs' claims for conspiracy to commit fraud appears to be an attack on the legitimacy of the MERS system itself. A nearly identical claim for Conspiracy to Commit Fraud Related to the MERS® System was dismissed with prejudice by this Court in *Cervantes v. Countrywide Home Loans*, CV 09-517-PHX-JAT, 2009 WL 3157160 (D. Ariz. Sep. 24, 2009), because no facts were alleged showing any fraud was committed by MERS or in the MERS system. In an effort to distinguish the present cases from *Cervantes*, some Plaintiffs, in their responses, argue that they "have not alleged that the MERS system is fraudulent, and Plaintiffs have not alleged that MERS committed any fraud" (Doc. 922, Ex. 1 at 5). Instead, Plaintiffs now maintain that these claims:

> "are about how the defendants named as co-conspirators created and used the MERS system to facilitate the securitization and sale of loans procured by fraud (also known as predatory loans, subprime loans, and toxic loans), and how the defendants created and used the MERS system to facilitate wrongful foreclosures on the parties who were the victims of predatory lending, and how the MERS system was used to facilitate wrongful foreclosures on others in Nevada"

*Id.* Under both Plaintiffs' complaints and the gloss provided by these plaintiffs' responses, Plaintiffs fail to state a claim. For the sake of thoroughness, the Court will consider each of these constructions–that the MERS system is itself fraudulent or that the MERS system "facilitated" fraudulent activity in turn.

  *A. The MERS system is not fraudulent, and MERS has not committed any fraud*

1    While some plaintiffs have conceded this point, it is helpful to provide an overview of the facts. MERS is a wholly owned subsidiary of MERSCORP, a Virginia corporation. Various of the named Defendant banks and lending institutions are shareholders in MERSCORP and participants in the MERS system. Under the MERS system, at the origination of a residential loan, the lender takes possession of a promissory note and the borrower and lender agree to designate MERS as the beneficiary under a deed of trust. Under the MERS system, the rights to the mortgage are tracked internally and not recorded in the public records each time the rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS system.

This Court in *Cervantes* considered two possible ways in which this MERS system could be considered fraudulent: (1) MERS is never really a beneficiary under the deed of trust because it never acquires a true beneficial interest; and (2) the MERS system is a means of circumventing the public recording requirements. The Court found that Plaintiffs' claims for conspiracy to commit fraud fail as a matter of law under Rule 12(b)(6) in that it failed to assert several elements of a claim for fraud. The Court relies on the analysis put forward in *Cervantes*. The elements of a fraud claim under Nevada law are largely similar to the elements of fraud under Arizona law which applied in *Cervantes*. Under both theories considered in *Cervantes*, several elements of a fraud claim under Nevada law–falsity, reliance, and injury–are lacking from Plaintiffs' complaints.

### B.   MERS "facilitated" fraudulent practices

Plaintiffs' claims that Defendants conspired to commit fraud related to MERS is insufficient both for a failure to plead conspiracy with the requisite particularity and for a failure to plead an agreement to participate in the facilitation of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs' allegations with respect to fraud were not made with particularity. Rather, Plaintiffs' allegations amount to mere conclusory statements and general averments of fraud. As set forth above section III.B above, Plaintiffs' complaints fall short of the requirements of Rule 9(b), *Twombly*, and *Iqbal*.

- 14 -

Thus, due to insufficient allegations of conspiracy, the facilitation gloss advanced by Plaintiffs in their responses fails to save their claims for conspiracy to commit fraud. The Court will dismiss these claims for failure to state a claim.

## VI. INTENTIONAL/NEGLIGENT MISREPRESENTATION

Plaintiffs assert a claim for intentional/negligent misrepresentation in *Stoffels*. To support an intentional misrepresentation claim, a plaintiff must allege "(1) a false representation that is made with either knowledge or belief that it is false . . . , (2) an intent to induce another's reliance, and (3) damages that result from this reliance." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). Negligent misrepresentation requires Plaintiff to allege (1) "a false statement . . . made through a failure to exercise reasonable care," (2) "that the statement was made in the course of business," (3) "that the statement was for the guidance of others in a business transaction," and (4) that "the injured party justifiably relied on their statement." *Georgiou Studio, Inc. v. Boulevard Inv.*, 663 F. Supp. 2d 973, 982 (D. Nev. 2009).

The *Stoffels* Complaint fails to allege the necessary facts to maintain either of these claims. Plaintiffs neither allege that Defendants intended Plaintiffs to rely on the purported misrepresentations–an indispensable element for intentional misrepresentation–nor that Plaintiffs justifiably relied on the purported misrepresentations to enter their loan. Plaintiffs do not allege that they were somehow induced into entering into their loans based upon a misunderstanding of the MERS system. Therefore, the Court will dismiss the claim for intentional/negligent misrepresentation

## VII. SLANDER OF TITLE

Plaintiffs assert a claim for slander of title in *Stoffels*. A claim for slander of title requires "false and malicious communications, disparaging to one's title in land, and causing special damages." *Executive Mgmt., Ltd. v. Ticor Title Co.*, 963 P.2d 465, 478 (Nev. 1998).

Here, Plaintiffs have not sufficiently alleged the falsity of these communications. Just as in *Ramos v. Mortgage Electronic Registrations* [sic] *Systems, Inc.*, No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *4 (D. Nev. Mar. 5, 2009), "Plaintiffs do not

1 dispute that they were in default on their loan. Nor is it false that the property was to be sold
2 at a trustee's sale. . . . It is not clear, therefore, what Plaintiffs might assert to be false or
3 malicious about the recorded notice."  In *Stoffels*, the only alleged falsity emerges from
4 Plaintiffs' argument that the MERS recordation process splits the note from the deed of trust,
5 renders the note unenforceable, and thus all subsequent action–including these
6 recordations–are invalid and false. As dealt with elsewhere in this Order, this argument is
7 not supported by the law. Therefore, the Court will dismiss Plaintiffs' claims for slander of
8 title for failure to state a claim.

## VIII. QUIET TITLE

10 In ten of these fourteen member cases, Plaintiffs allege that they are entitled to quiet
11 title because defendants have no standing to collect on their notes. This argument rests
12 completely on the "split the note" theory which, as noted above, has limited application in
13 a non-judicial foreclosure state. Plaintiffs have not cited any legal authority for the
14 proposition that a borrower may quiet title when the note has been split. Therefore, the Court
15 will dismiss Plaintiffs' claims for quiet title.

## IX. UNJUST ENRICHMENT

17 In thirteen of these fourteen member cases, Plaintiffs set forth claims for unjust
18 enrichment. To set forth a claim for unjust enrichment under Nevada law, a plaintiff must
19 allege that a defendant unjustly retained money or property of another against fundamental
20 principles of equity. *See Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700
21 (Nev. 1995). Unjust enrichment must be premised on some independent basis which
22 establishes a duty on the part of the defendant and the failure of the defendant to abide by
23 that duty. In and of itself, the phrase "unjust enrichment" does not describe a theory of
24 recovery. Rather, it is a way of describing the failure to make restitution where equity
25 requires. *See Melchior v. New Line Prods., Inc.*, 106 Cal.App. 4th 779, 792, (Cal. Ct. App.
26 2003);

27 Here, the Court finds that Plaintiffs have failed to state any other claims for relief.
28 Thus, as a matter of law, Defendants cannot have been unjustly enriched and equity does not

- 16 -

1 demand any restitution. Therefore, the Court will also dismiss the claims for unjust
2 enrichment for failure to state a claim.

## X. DECLARATORY RELIEF, INJUNCTIVE RELIEF, RESCISSION, REFORMATION

5 All Plaintiffs seek injunctive and declaratory relief. Several also seek reformation or
6 rescission. However, for the various reasons discussed above, the Court has already found
7 that all of Plaintiffs' other claims before this Court must be dismissed. Therefore, these
8 requests for remedies premised upon those underlying legal theories must likewise fail.

9 Of particular interest, in the *Whalen* case Plaintiff requests injunctive and declaratory
10 relief attached to no independent cause of action. Thus, the Court will dismiss the *Whalen*
11 complaint in its entirety.

## XI. LEAVE TO AMEND

13 Plaintiffs do not explicitly seek leave of this Court to file amended complaints.
14 However, some Plaintiffs have undertaken to remind the Court that it "should grant leave to
15 amend even if no request to amend the pleading was made, unless it determines that the
16 pleading could not possibly be cured by the allegation of other facts." *See*, *e.g.*, Doc. 619 at
17 32 (quoting *Doe v. United States*, 58 F.3d 494, 496-97 (9th Cir. 1995) (internal quotations
18 omitted)). Leave to amend a complaint is within the Court's sound discretion, and in
19 exercising this discretion, the Court must be guided by the command of Rule 15(a), which
20 provides that "leave shall be freely given when justice so requires." *Allen v. City of Beverly*
21 *Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing Fed.R.Civ.P. 15(a)). "In exercising its
22 discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15–to facilitate
23 decision on the merits rather than on the pleadings or technicalities.' . . . Thus, 'Rule 15's
24 policy of favoring amendments to pleadings should be applied with extreme liberality.'"
25 *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted). The Court should
26 consider five factors when assessing whether to allow leave to amend: (1) bad faith, (2)
27 undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether
28 the plaintiff has previously amended the complaint. *Foman*, 371 U.S. at 182.

1  The Court finds that Plaintiffs' indirect requests to amend their complaints do not
2 constitute bad faith, have not resulted from undue delay, and would not result in undue
3 prejudice to the opposing parties. Because Plaintiffs have not formally moved for leave to
4 amend, they have deprived the Court of the benefit of the redlined proposed amended
5 complaint that would be helpful in making a determination about the futility of amendment.
6 The Court also notes that in some of these cases, Plaintiffs have already amended their
7 complaints and are seeking leave to do so for a second or third time.

8  Yet the Court finds no reason to depart from Rule 15's liberal amendment policy and
9 will grant all of Defendants' motions to dismiss without prejudice.

10  To facilitate the streamlining of this MDL, the Court directs Plaintiffs, if they choose
11 to seek leave to amend, to jointly file a proposed consolidated amended complaint together
12 with the various plaintiffs whose actions are currently joined to this MDL. The Court gave
13 this same instruction in its September 30, 2010 Order, yet the plaintiffs in the first six actions
14 filed a motion for leave to file a consolidated amended master complaint (Doc. 1229). The
15 Court finds this motion to be premature and will deny it. The Court will continue to conduct
16 an initial round of pretrial motions for the other member cases as provided for in the various
17 practices and procedures orders until such time as it is appropriate to set forth a timetable for
18 filing this consolidated amended complaint.[4]

### CONCLUSION

Accordingly,

**IT IS ORDERED** regarding *Stoffels* that Defendants' two motions to dismiss (Doc. 707, 1168) are GRANTED.

---

[4] Should there arise a need for any plaintiff to seek preliminary injunctive relief, that party should file a proposed amended complaint concurrently with the motion for preliminary injunction. Such a proposed amended complaint need not conform with this Court's instruction that a consolidated amended complaint be filed.

In a departure from prior practice, any motions relating to less than all member cases, should be filed in the individual case numbers assigned to each case.

- 18 -

1 **IT IS FURTHER ORDERED** regarding *Hearne* that Defendants' two motions to
2 dismiss (Doc. 471, 700) are GRANTED.

3 **IT IS FURTHER ORDERED** regarding *Burke* that Defendants' seven motions to
4 dismiss (Doc. 442, 455, 456, 459, 467, 472, 694) are GRANTED.

5 **IT IS FURTHER ORDERED** regarding *Dalby* that Defendants' five motions to
6 dismiss (Doc. 444, 460, 463, 469, 698) are GRANTED.

7 **IT IS FURTHER ORDERED** regarding *Mason* that Defendants' four motions to
8 dismiss (Doc. 737, 755, 758, 794) are GRANTED.

9 **IT IS FURTHER ORDERED** regarding *Fitzgerald* that Defendants' four motions
10 to dismiss (Doc. 729, 738, 759, 1085) are GRANTED.

11 **IT IS FURTHER ORDERED** regarding *Whalen* that Defendants' two motions to
12 dismiss (Doc. 583, 703) are GRANTED.

13 **IT IS FURTHER ORDERED** regarding *Berilo* that Defendants' two motions to
14 dismiss (Doc. 689, 739) are GRANTED.

15 **IT IS FURTHER ORDERED** regarding *Fitzwater* that Defendants' motion to
16 dismiss (Doc. 745) is GRANTED.

17 **IT IS FURTHER ORDERED** regarding *Evans* that Defendants' two motions to
18 dismiss(Doc. 765, 798) are GRANTED.

19 **IT IS FURTHER ORDERED** regarding *Kartman* that Defendants' two motions to
20 dismiss (Doc. 593, 740) are GRANTED.

21 **IT IS FURTHER ORDERED** regarding *Bricker* that Defendants' three motions to
22 dismiss (Doc. 575, 691, 747) are GRANTED.

23 **IT IS FURTHER ORDERED** regarding *Boyd* that Defendants' two motions to
24 dismiss (Doc. 697, 744) are GRANTED.

25 **IT IS FURTHER ORDERED** regarding *Golding* that Defendants' two motions to
26 dismiss (Doc. 746, 1011) are GRANTED.

27 **IT IS FURTHER ORDERED** that Plaintiffs' First Motion for Leave to File Motion
28 for Leave to File Consolidated Amended Master Complaint Regarding Claims Related to the

Formation and Operation of the MERS System (Doc. 1229) is DENIED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate the following motions for judicial notice: Doc. 477, Doc. 445, Doc. 690, Doc. 693, Doc. 702, Doc. 704, and Doc. 730.

DATED this 25th day of January, 2011.

James A. Teilborg
United States District Judge